### BRAINTREE.

Where there is no by-law, in a town, prescribing the manner and time of giving notice of its meetings, no usage can be set up to have the force of law, and to annul any meeting opposed to it, unless that usage be ancient, and so well established, and so precise and definite, that all the inhabitants may be presumed to know the exact force of the usage, as they would of a law, if one existed, and to know, also, clearly and certainly, when the town-meeting conformed to and when it violated the usage.

It is no objection to an election on the fourth Monday of November, that the meeting on the second Monday was adjourned to the next day, but was not adjourned again to the next succeeding day.

If the record of a town-meeting is intelligible and consistent with itself, and contains every material statement required by law, it is itself the best and highest evidence of the facts therein stated, and must stand for truth, unless impeached as fraudulent; but where it is inconsistent and ambiguous, or deficient as to a material fact, the ambiguity may be explained, or the deficiency supplied, by extraneous evidence.

If it cannot be ascertained (either by the record, or by evidence) what was the whole number of votes given in at an election, it is void, for uncertainty.

THE election of Minot Thayer and Joseph Richards returned as members from this town, being controverted by John Hay-

[1] 62 J. H. 59, 71.

ward and others, the committee on elections reported thereon separately.

The report relative to the election of Minot Thayer, was as follows :—

" John Hayward and others, inhabitants of Braintree, petition against the right of Minot Thayer, Esq., to a seat in this house, on two grounds :

The first was, that he was elected at a town-meeting held on the fourth Monday of November, and the town adjourned its meeting of the second Monday to the next day, but did not adjourn again to the next succeeding day. And the petitioners contend, that no town can lawfully hold a town-meeting for the choice of representatives on the fourth Monday of November, unless they have previously tried to effect an election on each of the three preceding days allowed by the constitution. But the committee think that there is no force in this objection.

The second ground of objection to this election rests upon the notice of the town-meeting. The law on this subject is as follows :—

' All town-meetings, for the election of representatives in the general court, shall be notified by the selectmen of each town, in the manner legally established in such town, for calling other town-meetings.' Rev. Sts. c. 5, § 5.

There has never been a vote or by-law of this town, establishing the number of days which must intervene between the notice and the meeting ; nor any vote or by-law recognizing and establishing any usage. But the petitioners contend, that there is in that town a usage of equal force with law.

On this point it was proved :—

1. That the petition for the town-meeting was handed to the selectmen on the morning of the third Monday of November ; that they delivered the warrant to the constable, with directions for him to post, forthwith, four copies of the warrant in the four places where such notices were usually posted ; and that he did so post the same between 4 P. M. and 8 P. M. of the same day.

2. It was further proved, that for some years, (one witness testifying to two, another to five, and another to fourteen years,) notices for the governor's election had been posted fourteen days before the meeting; notices for other meetings about ten days, though sometimes more and sometimes less, and neither witness recollected an instance of less than seven days.

Upon these facts, the committee are of opinion, that, as every town has by law a right to regulate and fix precisely, by a by-law or specific vote, the length of the notices for its meetings,—where the town neglects or refuses so to do, no usage can be set up to have the force of law, and to annul any meeting opposed to it, unless that usage be ancient and so well established, and so precise and definite, that all the inhabitants may be presumed to know the exact force of the usage, as they would of the law; and to know also, clearly and certainly, when the town-meeting conformed to and when it violated the usage. And the committee are of opinion, that no such usage was shewn in this case, and no clear violation of any established usage.

The committee therefore report, that the said Minot Thayer is entitled to his seat in this house."

The report relative to the election of Joseph Richards, was as follows :—

"John Hayward and others, inhabitants of Braintree, petition against the right of Joseph Richards, Esq., to a seat in this house, on the ground that his election is void through uncertainty. The parties were heard by their counsel; many witnesses called on both sides; and the case fully investigated and ably argued.

The record of the town being produced, it appeared, that the meeting of the second Monday of November having been adjourned over to the next day, it was voted at the adjourned meeting to choose two representatives; and after one unsuccessful balloting, the record goes on as follows :—

' Voted, to proceed to the second balloting.

Voted, that the polls be closed in two minutes.

The time having expired, it was voted to close the polls.

The whole number of ballots given in was three hundred and ninety,    -    -    390
Alvah Morrison had one hundred and eighty-seven votes,        -    -    -    -    187
Dr. Jacob Richards had one hundred and sixty-nine,        -    -    -    -    -    169
Joseph Richards, Esq., had two hundred and one,    -    -    -    -    -    -    201
Minot Thayer, Esq., had one hundred and twelve,    -    -    -    -    -    -    112
Capt. Samuel French had nine,    -    -    -    -    -    -    -    -    -    -    9
Amos W. Stetson had seven,    -    -    -    -    -    -    -    -    -    -    7
Judson Stoddard had seventy-four,    -    -    -    -    -    -    -    -    -    74
Adjt. Samuel Hayden had two,    -    -    -    -    -    -    -    -    -    -    2
Benjamin Stevens had two,    -    -    -    -    -    -    -    -    -    -    2
Joseph R. Frazier had two,    -    -    -    -    -    -    -    -    -    -    2
Col. Freeman White had four,    -    -    -    -    -    -    -    -    -    -    4
Col. Otis Wild had forty-four,    -    -    -    -    -    -    -    -    -    -    44

Joseph Richards was declared (by the moderator) to be chosen.
Voted, to dissolve the meeting.'

If the votes cast for all the candidates, as above stated, be added together, they amount to 813. If every ballot had the names of two persons, there must have been at least 407 ballots; and if there were any single votes, the number of ballots must of course have been greater. It follows, therefore, that the whole number of ballots, by this statement, is more than 390, and more than twice 201, which was the number cast for Joseph Richards.

Here, then, is a case where the whole number recorded differs from the number found by adding together the recorded details. The committee doubted, whether they were not bound to the practice which in such cases rejects the whole number. If that were done, it is obvious that Joseph Richards had not a majority of the ballots.

The question then occurred whether the committee could receive evidence to explain this record, or to supply its deficiencies. On this point, the committee are of opinion, that where the record of a town-meeting is intelligible, and consistent with itself, and where it contains every material statement required by law, then the record is itself to be taken as the best evidence, and must stand unless impeached as fraudulent. In this case, however, the record is not consistent with itself; upon its face there appears to be an important ambiguity; and the committee concluded, that it was proper to let in evidence to explain the record, if possible.

To this course both parties assented; and the town clerk and selectmen were examined. But it was found that no explanation whatever could be given. Almost immediately after the meeting was dissolved, the selectmen discovered that they had made a mistake somewhere; but they did not know, and do not now know where the mistake exists, or how or by whom it was made. No witness knew, or stated any fact from which the committee could infer with any certainty, or even any clear probability, whether the whole number of ballots as first stated is right; or whether the whole number, as obtained by adding and dividing the details, is right; or whether, if the whole number is stated aright, and the details are wrong, the error in the details falls upon the statement of the votes cast for Joseph Richards, or of those cast for some other person or persons.

Under these circumstances, the committee regard this election as void for uncertainty; and they therefore report,

That Joseph Richards, Esq., is not entitled to a seat as member of this house."

These reports were severally agreed to.[1]